**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____

CHRISTINE SANCHEZ,                          :

     Plaintiff,                              :        Civil Action No. 08-4554 (FLW)

     v.                                       :

                                     **OPINION**

                                              :

TRICORP AMUSEMENTS, INC.,                    :

     Defendant.                               :

_____

**WOLFSON, United States District Judge:**

Presently before the Court are motions for summary judgment by Plaintiff Christine Sanchez ("Plaintiff" or "Sanchez") and Defendant Tricorp Amusements, Inc. ( "Defendant" or "Tricorp"). The motions arise out of Plaintiff's allegations that she was discriminated against on the basis of national origin during her employment as an administrative assistant with Tricorp and that she suffered adverse employment action as a result of complaining about the alleged discrimination.[1]

_____

[1]Initially, the Court finds that although Plaintiff's Complaint states that Plaintiff was "wrongfully terminated . . .because of her National Origin (Hispanic Puerto Rican), gender (female) and age [over forty (40) years old]," the Complaint itself only contains allegations relating to discrimination on the basis of national origin. See Plaintiff's Complaint ("Complaint") at 4.  Thus, not only has Plaintiff has failed to provide "a short and plain statement of the claim showing that the pleader is entitled to relief" as required by the Federal Rules of Civil Procedure, but the record before this Court contains no evidence to substantiate any claims of age or gender discrimination.  Thus, to the extent that Plaintiff's Complaint can be read to include claims for discrimination based on gender or age, Plaintiff has failed to meet her burden to establish a prima facie case of discrimination on these grounds and the Court dismisses these claims in their entirety.

For the reasons set forth below, the Court denies Plaintiff's Motion for Summary Judgment in full and grants Defendant's Motion for Summary Judgment.[2]

I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, who identifies herself as Hispanic, was hired on November 19, 2007 as a full-time administrative assistant with Tricorp.   Plaintiff was terminated from her employment on June 26, 2008.  Plaintiff alleges that during the seven months she was employed at Tricorp, she was treated differently than non-Hispanic employees by her direct supervisor, Marianne Moran ("Moran"), and was, eventually, terminated after complaining about the treatment.

The Handbook

Central to Plaintiff's argument are employment  policies set forth in the "Human Resources Employee Handbook" ("Handbook") which Plaintiff received on November 19, 2007.  Pl's Br., Ex., 3.  The Handbook contains various company policies that govern employee conduct at work. Id.  For example, the Handbook prohibits personal use of the internet during working hours and

_____

[2]The Court is troubled by counsel's failure to review, let alone abide by, the Federal Rules with regard to their submissions to this Court.  This Court has been forced to review the lengthy record numerous times to attempt to understand the Plaintiff's allegations of discrimination and to discover evidence that would substantiate these claims as well as to understand  Defendant's responses to Plaintiff's claims.  Moreover, the parties have attached numerous documents including, for example, Defendant's inclusion of  Plaintiff's entire document production as an exhibit to its Cross-motion for Summary Judgment.  The production includes numerous irrelevant and personal documents related to the Plaintiff including tax returns and doctor's prescriptions.  Moreover, the Court notes that the parties have filed certain documents in violation of the Federal Rules of Civil Procedure.  For example, Plaintiff filed a reply brief in violation of Local R. Civ. P. 7.1(d)(3).  Similarly, Defendant filed a Reply to Plaintiff's Response to Defendant's Fact Statement in violation of Local R. Civ. P. 56.1.  The Court cautions counsel that before undertaking any litigation, they should familiarize themselves with the relevant court rules and practices.

requires employees to limit personal phone calls at work.  <u>Id</u>. at 20.

In addition, the Handbook contains, <u>inter alia</u>, Tricorp's policies regarding employment, attendance and disciplinary action.  For example, the Handbook provides that employment with Tricorp is on an at-will basis, and that employment "may be terminated voluntarily or involuntarily at any time."  <u>Id</u>. at 20.   The Handbook also provides for a 90-day introductory period during which the company can assess a new employee's  skills and compatibility with the job.[3]  <u>Id</u>.  In addition,  the Handbook sets forth the following policy regarding time off from work: "When you need time off for personal reasons, talk to your manager.  Depending on the circumstances, you <u>may</u> receive time off. Full time employees <u>may also receive time off without pay</u> or use PTO for the following reasons: Jury duty; Death in immediate family/funeral of relative."  <u>Id</u>. (emphasis added).  Further, the Handbook explains that full-time employees are able to accrue five  paid personal days off per year beginning  from the date of hire.  <u>Id</u>.  In other words, "[d]ays are accrued at a rate of 3.34 hrs per full month worked."  <u>Id</u>.  Moreover, the Handbook explains that "Paid time off must be requested in writing and have approval of management.  Requests must be submitted on the "Vacation/Personal Time Request Form".

---

[3]Throughout her briefing, Plaintiff argues that the "introductory period" provided for in the Handbook was not the same as a "probationary" period to which she was allegedly subjected. Pl's Br., Ex. 3 at 20.  Specifically, Plaintiff contends that the 90-day "probationary" period of her initial employment was somehow qualitatively different than the 90-day introductory period provided for in the Handbook.  However, in light of the Handbook's  description of "introductory period," i.e., a period of time within which the company can assess an employee's compatibility, and the way the "probationary" period was applied to Plaintiff, the Court finds that Plaintiff's argument is specious and that the probationary period was, essentially, the same as the "introductory" period provided for in the Handbook.  <u>Id</u>.  Indeed, to the extent that Plaintiff appears to argue that the probationary period is somehow punitive, nothing in the record demonstrates that Plaintiff's probationary period was punitive or that it was in any way different than an introductory period provided for in the Handbook.

Please submit requests at least 60 days prior for vacation days and 2 weeks for personal days when possible." Id.

In addition, the Handbook contains the following policy relating to absenteeism:

> If you know you will be absent or late, make every reasonable effort to call the office at least one (1) hour before your regular starting time. Because excessive absenteeism or tardiness can create a hardship . . . occurrences of absence in excess of five (5) in a 12-month period may be grounds for corrective action. For purposes of this Attendance Policy, paid time off or other approved leaves will not be counted as absences.  Occurrences of absenteeism will be addressed as follows:
>
> Five (5) - verbal warning
>
> Six (6) - written warning
>
> Seven (7) if it occurs within 30 days of the 6th occurrence, written warning and there is a two (2) day suspension without pay.
>
> Eight (8) if it occurs within 30 days of the 7th occurrence, written warning and there is a four (4) day suspension without pay.
>
> In excess of eight (8) may be considered grounds for termination.

Id.

In addition, the Handbook provides the following policy relating to tardiness:

> Occurrences of tardiness will be addressed as follows:
>
> Three (3) – verbal warning
>
> Four (4) – written warning
>
> Five (5) –  if it occurs within 30 days of the 4th occurrence, there is a (2) two day suspension without pay.
>
> Six (6) – if it occurs within 30 days of the 5th occurrence, there is (4) day suspension without pay.
>
> In excess of six (6) may be considered grounds for termination.

Id.

The Handbook contains additional information regarding the company's approach to disciplinary action.  For example, the Handbook expressly states that "[p]oor performance" is a

4

ground for "discipline or termination," and that the following actions may also be considered grounds for disciplinary action: "[i]nsubordination or refusal to comply with directives; Failing to adequately perform job responsibilities; Excessive or unexcused absenteeism or tardiness . . . Any other action or conduct that is inconsistent with company policies, procedures, standards or expectations ." Id. at 18.  Moreover, the Handbook states that the company may take any of the following disciplinary actions – "oral warnings, written warnings, probation, suspension, demotion, discharge, removal or some other disciplinary action"– to correct activities or behaviors deemed unacceptable.   Id. at 18(emphasis added).  Finally, the Handbook provides that "[t]he company reserves the right to determine the severity and extent of any disciplinary action based on the circumstances of each case." Id. at 18.

Plaintiff's Employment with Tricorp

During the seven months Plaintiff  was employed by Tricorp, she  was absent from or tardy to work on at least the following occasions:

- November 26, 2007: Plaintiff was three hours late to work.  Pl's Fact Statement ¶ 9; Def's Fact Statement ¶ 14.

- November 27, 2007: Plaintiff was four and half hours late to work.  Pl's Fact Statement ¶ 10; Def's Fact Statement ¶ 15.

- December 3, 2007: Plaintiff was three hours late for work. Pl's Fact Statement ¶ 11; Def's Fact Statement ¶ 16.

- December 5, 2007: Plaintiff was two hours late to work. Pl's Fact Statement ¶ 12; Def's Fact Statement ¶ 17.

- December 17, 2007: Plaintiff was three hours late for work. Pl's Fact Statement ¶ 3; Def's Fact Statement ¶ 18.

- January 22, 2008: Plaintiff was absent from work for the entire day.  Pl's Fact Statement ¶ 18; Def's Fact Statement ¶ 19.

- January 23, 2008: Plaintiff was twenty minutes late to work. Pl's Fact Statement ¶ 19; Def's Fact Statement ¶ 20.

- January 25, 2008: Plaintiff was twenty minutes late to work.  Pl's Fact Statement ¶ 20; Def's Fact Statement ¶ 21.

- February 1, 2008: Plaintiff was absent from work for the entire day.  Pl's Fact Statement ¶ 21; Def's Fact Statement ¶ 22.

- February 5, 2008: Plaintiff was absent from work for the entire day.  Pl's Fact Statement ¶ 22; Def's Fact Statement ¶ 23.

- February 22, 2008: Plaintiff was fifteen minuets late for work.  Pl's Fact Statement ¶ 27; Def's Fact Statement ¶ 24.

- May 8, 2008: Plaintiff was absent from work for four hours.  Pl's Fact Statement ¶ 36.

Plaintiff received numerous verbal and written warnings as a result of her tardiness and absenteeism as well as a result of her misuse of company time and allegedly poor job performance.  Specifically, on January 2, 2008, Defendant issued Plaintiff a Record of Discussion (ROD) concerning Plaintiff's job performance which stated that Plaintiff had made numerous errors in her work, that she was using the internet for personal use in violation of Tricorp policy and that she had been previously warned about making too many personal calls

while at work.  In addition, the ROD noted that Plaintiff was asked "not to attend to any personal responsibilities during her work hours" and that Plaintiff was still in her probationary period. Pl's Br., Ex. 6.

A week later, on January 9, 2008, Defendant issued Plaintiff another ROD concerning Plaintiff's misuse of company time.  Specifically, the ROD again noted Plaintiff's personal use of the internet, that she was making personal calls on company time and that she  was still in her probationary period.  As a result of her "repeated use of company time for personal use," Defendant suspended Plaintiff for the day.  In addition, the ROD stated that "[i]f the abuse of time continues the next occurrence will result in a 4 day suspension w/o pay, and if there is another occurrence after the suspension the result will be termination."  Pl's Br., Ex. 7.

On January 15, 2008, Defendant issued Plaintiff another ROD regarding Plaintiff's misuse of company time.  Specifically, Defendant noted that Plaintiff was ten  minutes late returning from lunch and that Moran told Plaintiff that she had to make up the ten minutes at the end of the day. At the end of the day, Plaintiff said that she couldn't make up the time and walked out of the office.  As a result, Plaintiff was suspended for four days without pay and was permitted to return to work on January 22, 2008.  In addition, the ROD noted that "the next occurrence will result in separation from the company." Pl's Br., Ex. 8.

Thereafter, on February 5, 2008, Defendant issued Plaintiff an ROD entitled "Excessive Absenteeism/Tardiness" in response to a phone call from Plaintiff that she would be absent from work for the day.  Specifically, Defendant explained that this was the fifth day Plaintiff had missed since she was hired "in addition to 5 days that she requested personal time and has arrived

late on two separate occassions [sic]." As a result, Defendant explained to Plaintiff that an additional absence would result in a written warning and a seventh absence would result in a two day suspension." Pl's Br., Ex. 9.

On February 6, 2008, Plaintiff presented Defendant with a letter that set forth allegations of discrimination based on national origin. Pl's Br. , Ex. 12. Specifically, Plaintiff wrote:

> I'm being discriminated of my national origin and harassed on the daily basis. I
> don't appreciate working in a hostel [sic] environment were [sic] I am treated
> differently because of national Origin (Hispanic). Marianne Moran is being
> very abusive towards me in the work environment. For example on 2/4/08 she
> told me to write the names of the files on the boxes and then she said to put the
> names on a spreadsheet so I did that & she just kept finding any little mistake
> so that I can keep doing it over she had me do over at least 3x's. I also don't
> understand why I can't take a break and Sharon and Angela can take breaks. I
> would like for the harassment and the hostility towards me to stop.  I did not
> appreciate getting suspended for coming in 10 mins late. Meanwhile the two
> white girls goes and comes. I can keep going on with this situation.

Id.

In response to Plaintiff's letter, Defendant issued an ROD on February 6, 2008 which stated that "Tricorp will go on record that there is in fact no descrimination [sic] taking place and that Christine Sanchez has confused being held Accountable to performing the expectations of the position that she holds with a hostile work environment.  Christine has been treated fair and

8

reasonable and no different than any other Employee . . . Tricorp Inc will not launch an

investigation as Steven J. Paris Chief Operating Officer has not observed any descrimination

[sic] or hostile work environment connected with Any Employee . . .These Aligations [sic] are

believed to be false and misdirected."   Pl's Br., Ex. 12.

   In addition, on the same date as the above ROD, on February 6, 2008, Defendant issued an

ROD entitled "Probationary Period Review."  Pl's Br., Ex. 13.  Specifically, the ROD explained

that of the eleven weeks Plaintiff had completed since being hired, she had only worked five full

forty hour weeks, and moreover, that Plaintiff "did not have available accrued hours to take time

off. Through verbal communication and written documentation, Tricorp has attempted to correct

the misuse of company time.  Because of the behavior displayed through misuse of company

time and excessive absenteeism Chris is not meeting the expectations of the full time position

she was hired for."  Id.  As a result of Plaintiff's excessive record of absenteeism and misuse of

company time, Tricorp changed Plaintiff's job from a full-time salaried position to a part-time

hourly position.  The ROD explained that the part-time position "would offer a more flexible

work week of 16 hours from 10:00 AM – 2:00 PM Tues through Friday."  Id.  In addition, the

ROD provided for a new probationary period beginning on February 5, 2008 and continuing

through May 5, 2008. Id.

   Thereafter, on February 12, 2008, Charles Peitz (hereinafter "Peitz"), the President of

Tricorp, issued an ROD concerning Plaintiff's discrimination complaint.  Specifically, Peitz

explained that he met with Plaintiff to discuss the allegations of discrimination and had asked

Plaintiff a series of questions including whether Moran had ever made any comments about

Plaintiff's  national origin.  Plaintiff answered "no" to that question.  Pl's Br., Ex. 14.  In

9

addition, Peitz stated that he had asked Plaintiff to contact him directly if any "discriminatory situations take place in the future."  Pl's Br., Ex. 14.

On March 6, 2008, Moran  issued another ROD to Plaintiff regarding her job performance. Pl's Br., Ex. 16.  Specifically, Moran explained that Plaintiff continued to make mistakes in performing the accounts receivable and, as a result, she would no longer be responsible for those tasks.  In addition, Plaintiff's work hours were reduced to 3 days a week, four hours per day.  Id.

On or around March 20, 2008, Defendant received notice that Plaintiff had filed a Charge of Discrimination with the EEOC ("EEOC Notice") on February 22, 2008.  Pl's Br., Ex. 15; Pl's Fact Statement at 29.  The EEOC Notice alleged that Plaintiff had been discriminated against on the basis of national origin.  Id.  In an ROD following receipt of the EEOC Notice, Peitz asked Plaintiff to describe the words or actions that led "to the conclusion that [Moran] must be racially biased."  Plaintiff stated that she did not want to answer the question.  However, in response to the question whether "other girls in the office are expected to do less work" than she, Plaintiff responded, "No. We are all treated about the same."  Pl's Br., Ex. 19.   In addition, Peitz asked about Plaintiff's allegation that she was denied the ability to take breaks and Plaintiff stated, "The other girls take breaks, outside to smoke. I should be able to take breaks, too."  In response, Peitz stated, "I've seen you in the lunch room on your cell phone. Isn't that taking a break?"  In response, Plaintiff answered, "[w]hen my kids call me I have to speak with them. I have to do that."  Id.

On April 10, 2008, Defendant issued an ROD to Plaintiff entitled "Personal Time."  Specifically, Plaintiff had requested to take April 15, 2008 off for a doctor's appointment and

Moran explained that Plaintiff should not schedule appointments during work hours.  In addition, Moran told Plaintiff that if she kept the appointment, she would only be working two days the following  week.  Pl's Br., Ex. 21.

Moran issued another ROD to Plaintiff on April 16, 2008 entitled "Job Performance."  Pl's Br., Ex. 22.  This ROD noted that Plaintiff had misfiled documents.

On May 7, 2008, Plaintiff received her "Administrative Staff Evaluation" for the period from November 2007 through April 2008.  Pl's Br., Ex. 23.  Moran evaluated Plaintiff at the lowest levels in each of 20 categories for the extended probationary period.  In the comments section, Moran stated that "During the probationary period, Chris demonstrated problems with attendance and tardiness."  Id.  In addition, Moran noted that "Chris is not exhibiting a clear understanding of her job responsibilities," and that "Chris does not work well independently. She seems easily confused when asked questions about her work."  Id.  In a section entitled "Goals for the Upcoming Year," Moran stated that Plaintiff "needs to continue to apply herself in an effort to meet the basic skills required to perform tasks in office operations."  Id.

On May 8, 2008, Moran issued an ROD to Plaintiff entitled "Attendance" which stated that Plaintiff did not report for work that day and noted that the next absence  will result in a two day suspension.  Pl's Br., Ex. 24.

On June 12, 2008, Plaintiff received a "Right to Sue" letter from the EEOC which advised Plaintiff that she must file suit within 90 days of receipt of the letter.  Pl's Br., Ex. 25.  Defendant received notice of this Right to Sue letter sometime thereafter.  Pl's Fact Statement ¶ 38.

On June 26, 2008, Defendant issued three RODs to the Plaintiff each of which stated that

11

Plaintiff "will be separated from employment at Tricorp today."  Pl's Br., Exs. 26,27 & 28.

Individually, each of the RODs documented Plaintiff's poor job performance.  In one ROD,

Moran stated that she"found an excessive amount of misfiled documents.  Items were filed in the

incorrect year, incorrect customer files and also items were not appropriately filed by date order."

Pl's Br., Ex. 27.  In another ROD, Moran explained that Plaintiff "is unable to accurately record

service calls from the service line voice mail into the written service log. Information continues

to be recorded incorrectly and incompletely."  Pl's Br., Ex. 28.   In the final ROD, Moran stated

that "the written documentation regarding Chris's job performance along with the April

evaluation indicate an inability of Chris to perform the basic job functions she has been

assigned."  Pl's Br., Ex. 26.

On September 12, 2008, Plaintiff filed a Complaint against Tricorp setting forth the

following  four claims: (1) Discrimination on the Basis of National Origin; (2) Retaliation; (3)

Hostile Work Environment; and (4) Wrongful Termination.   On April 9, 2010, Plaintiff filed a

Motion for Summary Judgment.  Subsequently, on April 23, 2010, Defendant filed a Cross-

motion for Summary Judgment.

## II. DISCUSSION

## A. Summary Judgment Standard

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the

facts in the light most favorable to the non-moving party, the moving party is entitled to

judgment as a matter of law."  Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d

Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P.

56(c).  For an issue to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party."  Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002).  For a fact to be material, it must have the ability to "affect the outcome of the suit under governing law."  Kaucher, 455 F.3d at 423.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp., 477 U.S. at 323.  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994).  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.   Anderson, 477 U.S. at 256-57.  "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'"  Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)).  Moreover, the non-moving party must present "more than a scintilla of evidence showing that there is a genuine issue for trial."  Woloszyn v. County of Lawrence, 396 F.3d 314, 319 (3d Cir. 2005).  Indeed, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion,

against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322.

Moreover, in deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. Credibility determinations are the province of the fact finder. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

B. Cross-motions for Summary Judgment

1. Plaintiff's Title VII Claim for Discrimination on the Basis of National Origin

Title VII prohibits employment discrimination based on race, color, religion, sex or national origin. 42 U.S.C. § 2000e-2. To bring a successful claim under Title VII, a plaintiff must prove that "an employer has 'treated [a] particular person less favorably than others because of' a protected trait ... [and] 'that the defendant had a discriminatory intent or motive.'" Ricci v. DeStefano, --- U.S. ----, ----, 129 S.Ct. 2658, 2672 (2009) (quoting Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 985-986 (1988)). Where, as here, a plaintiff does not present direct evidence of discrimination, Title VII claims alleging race discrimination are analyzed under the burden-shifting framework established by McDonnell Douglas v. Green, 411 U.S. 792 (1973). Under the McDonnell Douglas framework, the plaintiff "bears the initial burden of establishing a prima facie case by a preponderance of the evidence." Sarullo v. United States Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003) (citation omitted). To establish a prima facie case, the plaintiff

14

must show "(1) the plaintiff belongs to a protected class; (2) he/she was qualified for the position; (3) he/she was subject to an adverse employment action despite being qualified; and (4) . . . circumstances that raise an inference of discriminatory action." Id. Importantly, the Third Circuit has explained that "the prima facie test remains flexible and must be tailored to fit the specific context in which it is applied." Id. (citing Geraci v. Moody-Tottrup, Int'l, Inc., 82 F.3d 578, 581 (3d Cir.1996)).

If the plaintiff succeeds in satisfying the prima facie test, then the burden of production shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the adverse employment action. Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994). If the defendant makes such a showing, the plaintiff must then demonstrate by a preponderance of the evidence that the stated nondiscriminatory rationale was a mere pretext for discrimination.

Initially, the Court notes that despite Defendant's strenuous argument to the contrary, Plaintiff unequivocally satisfies the first prong of the prima facie case of employment discrimination.[4] Because there is no question that Plaintiff identifies herself as Hispanic and has explicitly stated on numerous occasions that she is Hispanic, Sanchez Dep. 79:14, 81:2-4, 83:6, 83:8, Plaintiff meets the first prong of the prima facie case for discrimination. See, e.g., Vasquez

---

[4]The Court finds it necessary to note the frivolous arguments that Defendant puts forth regarding Plaintiff's membership in a protected class. See, e.g., Def's Br. at 11 ("According to Plaintiff's own Deposition, she is minimally 3rd generation American...The only family member that she knows of who was born in Puerto Rico was her grandmother. Her National Origin, therefore, is American . . . She says her nationality is "Hispanic". Hispanic is not a nationality."). The Court need not comment further other than to suggest that Defendant would better serve its purpose to focus on the other prongs of its defense to Plaintiff's discrimination case than to probe Plaintiff on her national origin for more than six pages of a deposition transcript. Sanchez Dep. 78-84.

v. J.B. Hunt Transport Inc., No. 07-5615, 2008 WL 5136947, at * 4 (D.N.J. Dec. 5, 2008)("Plaintiff states that he is of Hispanic origin, which is sufficient to establish that plaintiff is a member of a protected class.")

In addition, the Court finds that Plaintiff has satisfied the second and third prongs of the prima facie case for employment discrimination.  First, Defendant has entirely failed to address whether Plaintiff was qualified for the position as an administrative assistant at Tricorp.  Despite Plaintiff's poor attendance and job performance once she began working at Tricorp in November 2007, Moran hired Plaintiff as an administrative assistant, thus, in the absence of any argument or evidence to the contrary, Plaintiff appeared, at the least, qualified to be hired for the position in that she possessed the necessary education and/or experience for the position.   In addition, the Court finds that when Plaintiff's job was changed from a full-time salaried position to a part-time hourly employee and, later, when she was terminated from her employment, Plaintiff suffered adverse employment actions.

However, the Court finds that Plaintiff has failed to satisfy the fourth prong of the prima facie test.  Initially, the Court finds that Plaintiff does not allege, and the evidence does not support, that Plaintiff was overtly harassed on the basis of her national origin.   Indeed, Plaintiff admits that neither Moran nor anyone else ever made any statements or remarks about her national origin. Pl's Affidavit ¶31; Pl's Br., Ex. 14.  Moreover, Plaintiff admits that nobody ever referred to her as Hispanic and that the only way anyone would know she was Hispanic was because her resume states that she is bilingual.[5]  Sanchez Dep: 87:12-23.

_____

[5]The Court finds Plaintiff's reliance on her resume in support of her discrimination claim misplaced.  First, equating being bilingual with being Hispanic is less than convincing.

Thus, to determine whether Plaintiff has satisfied the fourth prong of the prima facie case, the Court must consider whether plaintiff has presented any evidence to demonstrate that non-Hispanic employees were treated more favorably.   Here, Plaintiff contends that she was discriminated against because Moran preferred her non-Hispanic co-workers and gave them "easier and less work."  Pl's Affidavit ¶31; Pl's Br., Ex. 14.   Specifically, Plaintiff testified that Moran gave her non-Hispanic co-workers fewer work assignments, permitted them to go on breaks and to use the internet.  Sanchez Dep. 447:17-23; 448:17-449:7.

First, the Court notes that, other than the bald allegation that her non-Hispanic co-workers received fewer assignments, Plaintiff has presented no evidence to substantiate this charge.  See, e.g., King v. Cape May County Bd. of Freeholders, Civ. No. 04-4243, 2007 WL 2300785, at *3(D.N.J. August 8, 2007)("in a summary judgment motion the Court does not have to credit bald statements unsubstantiated by at least circumstantial evidence . . . Accordingly, the Court finds Plaintiff has not made a prima facie showing of gender discrimination because she has not provided any evidence to substantiate such a claim.")(citations omitted)); Churchill v. Int'l Bus. Mach., Inc., Nat'l Serv. Div., 759 F.Supp 1089, 1097 (D.N.J.1991)(holding that subjective impressions, without documentary evidence, were insufficient to support prima facie showing of gender discrimination); Astree v. U.S. Dept. Of Justice, Bureau of Prisons, 1999 WL 94621, at *

---

Moreover,  the Court notes that Moran must have seen Plaintiff's resume in order to hire Plaintiff for the administrative assistant position.  Because Plaintiff's resume stated that Plaintiff was bilingual, and because Moran saw Plaintiff's resume, it follows that Moran must have known that she was Hispanic – under Plaintiff's rationale that being bilingual equates with being Hispanic. Despite this knowledge, Moran hired Plaintiff for the position.  Thus, Plaintiff's argument that Moran discriminated against her on the basis of national origin is undermined since Moran hired Plaintiff despite the fact that Moran, allegedly, knew  that Plaintiff was Hispanic.

17

5 (E.D. Pa. Jan. 8, 1991)("Under Rule 56, a nonmoving party must adduce through affidavits or otherwise 'more than a scintilla of evidence' that a material fact remains in dispute . . . Although a non-movant . . . is not required under Rule 56 to dispute every assertion in the movant's affidavits, he must provide or point out some affirmative evidence in the record that substantiates his claim.").  Indeed, the Court finds that instead of supporting Plaintiff's contention that non-Hispanic workers were given less work, the record actually substantiates the opposite conclusion. For example, in an ROD documenting a meeting between Peitz and Plaintiff, Plaintiff stated that her co-workers were not expected to do less work and that "[w]e are all treated the same."  Pl's Br., Ex. 19.  Thus, in light of the record before me, the Court need not and will not credit Plaintiff's bald and unsupported statement regarding work assignments.

Similarly, Plaintiff's own deposition testimony undermines her allegations regarding the discriminatory application of the company's policy regarding the internet.  First, although Plaintiff alleges that non-Hispanic employees  were allowed to use the internet and that she was not, Plaintiff testified that she did not actually know whether her non-Hispanic co-workers were permitted to use the internet.  Sanchez Dep. 448:20-24; 480:18-20; 482:19-24.  Moreover, Plaintiff has put forth no evidence to demonstrate that non-Hispanic employees were accessing the internet for personal use instead of for business-related reasons.  Conversely, the record demonstrates that Plaintiff was observed on numerous occasions using the internet for reasons unrelated to any of her job responsibilities.   See, e.g.,  Pl's Br., Exs. 6 & 7

Thus, the only evidence that may demonstrate that similarly situated employees were treated differently is Plaintiff's observation that her non-Hispanic co-workers were permitted to take two smoking breaks each day and that she was not permitted to take equivalent breaks.  Sanchez Dep.

18

496:22-497:23.   However, the record demonstrates that Plaintiff was, in fact, able to take breaks to speak to her children on the phone.  Pl's Br., Ex. 15; Pl's Fact Statement at 29.  For these reasons, the Court concludes that Plaintiff has not shown that similarly situated employees were treated differently.

However, even if the Court were to assume, arguendo, that Plaintiff could satisfy the fourth prong of the prima facie case of discrimination, the record demonstrates that Tricorp had legitimate, nondiscriminatory reasons for reducing Plaintiff's hours and, ultimately, terminating her employment.  Although Defendant's papers are less than clear, the record demonstrates that Plaintiff's hours were reduced and her employment terminated because of her absenteeism and poor performance.  Indeed, the Court finds that the record is replete with instances of Plaintiff's absences from, and tardiness in reporting to, work in violation of Tricorp policy as well as Plaintiff's inability to properly perform her assigned work duties.  Pl's Fact Statement ¶¶ 14 -22, 27, 36; Pl's Br., Exs. 6 -9, 16, 22, 23, 27, 28.  Thus, Tricorp has produced evidence of a nondiscriminatory reason for plaintiff's termination to rebut the presumption of discrimination that would be created by a prima facie case.

To counter this showing, a plaintiff must prove that the "illegitimate factor was a determinative factor in the adverse employment decision, that is, that but for the protected characteristic," the plaintiff would not have been terminated.  Fuentes, 32 F.3d at 764.  The plaintiff may prevail by showing "pretext" or by showing, through direct or circumstantial evidence, that the challenged action resulted from discrimination.  Watson v. Se. Pa. Transp. Auth., 207 F.3d 207, 215 n.5 (3d Cir. 2000).   In other words, to survive summary judgment, the plaintiff must present sufficient evidence to: (1) cast doubt upon Tricorp's proferred reasons for

terminating her by "painting them as weak, implausible, contradictory or incoherent"; or (2) from which a factfinder could "reasonably conclude that an illegitimate factor more likely than not was a motivating or determinative cause of the adverse employment decision (e.g. by showing that the employer in the past had subjected him to unlawful discriminatory treatment, that the employer treated other, similarly situated persons. . .more favorably, or that the employer has discriminated against other members of his protected class or other protected categories of persons.)"   Fuentes, 32 F.3d at 765.

The Court finds that Plaintiff cannot meet this burden.   First, the Court notes that Plaintiff has failed to produce any evidence to support an assertion that the stated reasons for her termination were merely a pretext or that would cast doubt on Tricorp's legitimate reasons for demoting and, eventually, terminating her.  Indeed, Plaintiff has not disputed her lengthy record of absenteeism, tardiness, misuse of company time and poor job performance.[6]   Moreover, Plaintiff has put forth no evidence to demonstrate that the non-Hispanic employees who allegedly received preferential treatment, were similarly situated in that they were continuously tardy, absent or doing a poor job.  Thus, Plaintiff has not shown that Defendants overlooked these behaviors in others, nor that the Handbook was not uniformly applied to employees with a record

_____

[6]The Court notes that although Plaintiff appears to disagree with one instance of tardiness, Plaintiff's own testimony belies this dispute.  Sanchez Dep. 489.  In attempting to establish that she was not ten minutes late returning from lunch on January 15, 2008, Plaintiff states that she "was sitting in the back of the room having lunch with the guys. I was in the building. I would say maybe about – 20 feet." Sanchez Dep. 489:15-19.  Thus, Plaintiff does not argue that she was timely, i.e.,  at her desk and working during those ten minutes; instead, Plaintiff's concedes that she was not working and was, instead, having lunch in the back of the building.  The Court notes that Plaintiff could easily have been "in the building" and still be late returning from lunch.  Because Plaintiff has not even made a colorable argument concerning  this one instance of lateness, Plaintiff's disagreement on this point is moot.

like that of Plaintiff.  As discussed above, the only evidence of preferential treatment is Plaintiff's observation that non-Hispanic employees left their desks to take smoking breaks and that she was not allowed to take breaks.  Sanchez Dep. 496:22-497:23.   In response to this, however, Defendant contends, and Plaintiff does not dispute, that she was permitted to leave her desk to speak to her children.  Pl's Br., Ex. 15.  In the absence of any evidence to the contrary, the Court notes that Tricorp appears to have been  following its own policies with regards to absenteeism, tardiness, misuse of company time and poor performance.  Indeed, the  reasons for Plaintiff's termination are well-established by the record before this Court and the Plaintiff has not offered anything that would "demonstrate weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the Defendant's proffered legitimate reasons to" terminate Plaintiff.  Gaston  v. New Jersey, No. 05-3006, 2008 WL 540853, at *15 (D.N.J. Feb. 21, 2008). In other words, Plaintiff has not demonstrated that Hispanic animus and not her absences from work and poor job performance motivated Tricorp to reduce her hours and terminate her employment.  Thus, the Court will grant summary judgment in favor of Tricorp on Plaintiff's claim for discrimination on the basis of national origin and deny Plaintiff's motion for summary judgment.


2. Plaintiff's Claim for Hostile Work Environment

Plaintiff additionally alleges that she was subject to a hostile work environment during her employment with Tricorp. To establish a hostile work environment claim under Title VII, Plaintiff must prove: (1) that she suffered intentional discrimination because she was Hispanic;

(2) that the discrimination was pervasive and regular; (3) that it detrimentally affected her; (4) that the discrimination was sufficiently severe to have detrimentally affected a reasonable person in his position; and (5) that there is a basis for vicarious liability."  See Cardenas v. Massey, 269 F.3d 251, 260 (3d Cir.2001) (stating standard for hostile work environment under Title VII).

The threshold issue in a Title VII hostile work environment claim is whether the plaintiff has "produced evidence of intentional discrimination based on" her race.  Waite v. Blair, Inc., 937 F.Supp. 460, 468 (W.D.Pa.1995). "The mere fact that a work environment may prove to be intolerable to a particular employee does not necessarily implicate Title VII, since the civil rights laws do not guarantee a working environment free of stress."  Id.  Title VII does not guarantee utopia in the workplace, or even a pleasant workplace; if the workplace "is unsavory for any reason other than hostility generated on the basis of race, gender, ethnicity, or religion, no federal claim is implicated. In short, personality conflicts between employees are not the business of the federal courts."  Id. (citations omitted).

In her brief, Plaintiff contends that she suffered a hostile work environment in that she "was denied her personal leave time of 5 days . . . denied the application of the tardiness and attendance policy;  her 40 hour work week was reduced to 16 hours per week and subsequently to 12 hours per week; she was demoted from an Administrative Assistant to a Clerk; she was suspended and not allowed to work in violation of the Defendant's Handbook."  Pl's Br. at 33. The Court, however, does not find that, even granting all inferences in favor of Plaintiff on Defendant's Motion for Summary Judgment, Plaintiff was subject to a hostile work environment in violation of Title VII.

First, Plaintiff has failed to establish that she was discriminated against because she was Hispanic, let alone that the discrimination was pervasive and regular.  Indeed, as discussed above, Plaintiff admitted that no one in the office ever referred to her as Hispanic and that the only way people would even know her national origin is because her resume states that she is bilingual.  Moreover, based on the record and the Handbook, it is evident that Plaintiff was absent from, and tardy in reporting to, work on numerous occasions – well before she had accrued the necessary number of personal days to cover such absences.  Indeed, the Handbook expressly provides that personal days accrue at the rate of 3.34 hours per month from the date of hire.  Pl's Br., Ex. 3 at 20.   Nowhere has Plaintiff alleged that she accrued sufficient time to cover her tardiness and her absences.   In addition, the Handbook itself only provides that an employee "may" receive time off for personal reasons "[d]epending on the circumstances."  Id. at 6.  Moreover, the Handbook expressly provides that this time off may be without pay.  Id. Thus, there is no dispute that the Handbook was properly applied to the Plaintiff.  Moreover, the Handbook explicitly provides that Plaintiff was an employee-at-will and that Tricorp reserved the right to take any necessary disciplinary actions to correct behaviors and actions it deemed unacceptable based on the circumstances involved in each case.  Thus, any actions Tricorp took with regard to Plaintiff, such as reducing her hours, were permitted by the Handbook as a result of Plaintiff's poor attendance and poor job performance.   For these reasons, the Court will grant summary judgment in favor of Tricorp on Plaintiff's Hostile Work Environment claim and deny Plaintiff's motion for summary judgment.

3. Plaintiff's Claim for Retaliation

Plaintiff also claims that she was demoted and, ultimately, terminated after filing an internal complaint of discrimination on February 6, 2008 and a Notice of Discrimination with the EEOC on February 22, 2008.  As with racial discrimination, when addressing a motion for summary judgment on a retaliation claim, the Court employs the McDonnell Douglas  framework.  See Moore v. City of Philadelphia, 461 F.3d 331, 341 (3d Cir.2006).   To establish a prima facie case of discriminatory retaliation under  Title VII, a plaintiff must demonstrate that she: (1) engaged in protected activity; (2) that the employer took an adverse employment action against her subsequent to or contemporaneously with such activity; and (3) that there is a causal connection between the protected activity and the adverse action.  See Neiderlander v. American Video Glass Company, 80 Fed. Appx. 256, 260 (3d Cir.2003).  A plaintiff may establish the requisite causal connection by showing a close temporal proximity between the protected activity and the alleged retaliatory conduct, or by identifying "circumstantial evidence . . . that give [s] rise to an inference of causation."  Marra v. Philadelphia Hous. Auth., 497 F.3d 286, 302 (3d Cir. 2007).

If a plaintiff is able to establish the elements of her prima facie case, "the burden shifts to the employer to advance a legitimate, non-retaliatory reason for its adverse employment action." Krouse v. Am. Sterilizer Co., 126 F.3d 404, 500 (3d Cir. 1997).  If the employer satisfies that burden, the plaintiff must then prove that "retaliatory animus played a role in the employer's decision-making process and that it had a determinative effect on the outcome of that process." Id. at 501.  In other words, the plaintiff's explanation "must be able to convince the factfinder both that the employer's proferred explanation was false, and that retaliation was the real reason for the adverse employment action."  Id. at 500-501.

24

Thus, in proving a claim for retaliation, this Court must first determine whether Plaintiff engaged in any protected activity when she: (1) filed an internal complaint with Tricorp on February 6, 2008 that alleged discrimination on the basis of national origin; and (2) when she filed a Notice of Discrimination with the EEOC on February 22, 2008.  The language of Title VII explains what constitutes a "protected activity."  Specifically, section 704(a) forbids an employer from discriminating against an employee because she "has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge. . .or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).  The phrase "this subchapter" refers to 42 U.S.C. §§ 2000e through 2003-17, which contain the provisions regarding an employee's rights when an employer has discriminated against him or her on the basis of race, color, sex, religion, or national origin.  See Slagle v. County of Clarion, 435 F.3d 262, 267 (3d Cir. 2006).  Thus, a charge "under this subchapter" is a charge that alleges discrimination on the basis of one or more of the prohibitied grounds.  Therefore, once a plaintiff files a facially valid complaint, the plaintiff will be entitled to the broad protections of §704(a).  In the instant matter, the Court finds that Plaintiff engaged in protected activity when she complained about the alleged discrimination she was suffering in the workplace by filing both an internal complaint and a Notice of Discrimination with the EEOC.  Thus, the Court finds that Plaintiff has satisfied the first prong of the prima facie test.

Next, the Court must determine whether Plaintiff suffered an adverse employment action subsequent to or contemporaneously with the protected activity.  Because Plaintiff's hours were reduced on February 6, 2008, the same day that she presented Tricorp with an internal complaint alleging discrimination, the Court finds that Plaintiff has met the second prong of the test for

retaliation.

Finally, however the Court must determine whether there is a causal connection between the protected activity and the adverse action. In making this determination, the Third Circuit has generally focused on two indicia: timing and evidence of ongoing antagonism. See Kachmar v. SunGard Data Systems Inc., 109 F.3d 173, 177 (3d Cir. 1997); Woodson v. Scott Paper Co., 109 F.3d 913, 920-21 (3d Cir. 1997); Watkins v. Nabisco Biscuit Company, 224 F. Supp. 2d 852, 871 (D.N.J. 2002). Although timing alone is rarely sufficient to establish a prima facie case of retaliation, the temporal proximity between an adverse employment action and the protected activity may permit an inference of causation where the relatively short interval between the two is "unusually suggestive of retaliation." Krouse, 126 F.3d at 500. However, where the timing of an employer's adverse action is, by itself, inconclusive, an employee may demonstrate the requisite causal link by producing circumstantial evidence of "ongoing antagonism" in the intervening period between the protected activity and the adverse action. See Kachmar, 109 F.3d at 177; Woodson, 109 F.3d at 921.

As noted above, Plaintiff filed an internal complaint alleging discrimination on February 6, 2008. That same day, Plaintiff's position was changed from a full-time salaried employee to that of a part-time hourly employee. The Court finds this timing "unusually suggestive of retaliation." See Sgro v. Bloomberg, 331 Fed. Appx. 932, 940-941 (3d Cir. 2009); Shellenberger v. Summit Bancorp., Inc., 318 F.3d 183, 189 (3d Cir.2003) ( "The amount of time between the protected activity and the alleged retaliation is a circumstance to be considered by a fact-finder in determining if the plaintiff has established the required causation."). Thus, the Court finds that Plaintiff has adequately set forth a prima facie case for retaliation.

However, this is not the end of the inquiry.  Once a plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant to advance a legitimate, non-discriminatory reason for making the adverse employment decision.  As discussed above, although  difficult to discern from the muddled argument and reasoning set forth in Defendant's papers, the Court understands Defendant to argue that Plaintiff did not suffer the adverse employment action in retaliation for protected activity, but because of her absenteeism, tardiness, misuse of company time and poor job performance.  Indeed, the record demonstrates that Plaintiff had received numerous RODs concerning her absenteeism, poor job performance and improper use of company time prior to February 6, 2008.  Pl's Br., Exs. 6, 7, & 8.  Moreover, the record establishes, and Plaintiff does not dispute, that these problems continued well after Plaintiff filed her internal Complaint as well as her Notice of Discrimination with the EEOC.  Pl's Br., Exs., 16, 21 & 24.  Thus, the Court finds that Defendant has satisfied its burden of establishing a legitimate, non-discriminatory reason for reducing Plaintiff's hours and, eventually, terminating her employment.

However, this is still not the end of the inquiry.  Once a defendant proffers a legitimate, non-retaliatory reason for its conduct, a plaintiff must then establish that defendant's proffered explanation is false or pretextual and that retaliation was the real reason for reducing her hours and terminating her.   Initially, the Court notes that Plaintiff has not put forth any evidence to rebut Defendant's legitimate reason for demoting and terminating Plaintiff.  In fact, with only one exception[7], Plaintiff does not dispute her record of tardiness or absenteeism that began during her first week of employment with Tricorp and continued through her termination in June

---

[7]See supra n.6.

2008.  Pl's Fact Statement ¶¶ 14 -22, 27, 36; Pl's Br., Exs. 6 -9, 16, 22, 23, 27, 28.   Moreover,

the record is replete with instances of Plaintiff's ongoing misuse of company time and poor job

performance.  Id.  Thus, although Plaintiff appears to argue that Defendant demoted Plaintiff on

February 6, 2008, as a result of her discrimination complaint, the Court finds that based on the

record before it, and in accordance with the Handbook, Defendant could have terminated

Plaintiff on February 6, 2008 in response to her absenteeism, tardiness, poor job performance and

misuse of company time.  Indeed, the Handbook expressly provides that Plaintiff was an at-will

employee and that Tricorp could take any number of disciplinary actions including "demotion" or

"discharge" in response to the "fail[ure] to adequately perform job responsibilities; excessive or

unexcused absenteeism or tardiness" or "any other action or conduct that is inconsistent with

company policies," including, inter alia, the misuse of company time.  Pl's Complaint, Ex. 3 at

18.  In the end, after a full review of the record,  it appears to this Court that Plaintiff is only

relying on temporal proximity to rebut Defendant's reason for the adverse employment action.

However, the mere fact that Defendants provided Plaintiff a new job with a new introductory

period on February 6, 2008, cannot, on its own, support Plaintiff's theory of retaliation.  See, e.g.,

Stingley v. Den-Mar Inc., 347 Fed. Appx. 14, 20 (5th Cir. 2009)("although temporal proximity

can establish a prima facie case of retaliation, it cannot – standing alone – rebut an employer's

legitimate, nondiscriminatory reason for the employment action."); Pritchett v. Imperial Metal

and Chemical Co., No. Civ.A. 96-0342, 1997 WL 570929, at * 4 ("Timing alone is not sufficient

to prove discriminatory motive.").  Moreover, Plaintiff does not dispute that her absences,

tardiness and poor job performance continued throughout her second introductory period, yet,

Plaintiff remained employed at Tricorp well-past May 5, 2008, the end of that second period.  In

light of these facts, the Court finds that Plaintiff has not established that Defendant's proffered explanation for demoting and terminating her is false or pretextual.  Because Defendant's reasons for reducing Plaintiff's hours and terminating her are well established by the record before this Court, the Court will grant summary judgment in favor of Tricorp on Plaintiff's claim for retaliation and deny Plaintiff's motion for summary judgment.

4. Plaintiff's Claim for Wrongful Termination

In addition, Plaintiff contends that Tricorp wrongfully terminated her from her employment in violation of Title VII.  Specifically, Plaintiff contends that "[e]mployees have a right to work in an environment that is free from harassment and discrimination. According to t he EEOC, a federal law prohibiting job discrimination is Title VII of the Civil Rights Act of 1964 . . . The proffered discovery evidence establishes that the Defendant discriminated against the Plaintiff and when the Plaintiff complained she was harassed, and subsequently retaliated against and terminated from her employment with the Defendant." Pl's Br. at 37-38.  Because Plaintiff's claim for "Wrongful Termination" is duplicative of Plaintiff's Title VII claim and, in fact, because Plaintiff cites Title VII as the basis for her "Wrongful Termination" claim, the Court does not find that this is a separate cause of action and will grant summary judgment in favor of Tricorp on Plaintiff's claim for Wrongful Termination and deny Plaintiff's motion for summary judgment.


III. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is DENIED and

Defendants' Cross-Motion for Summary Judgment is GRANTED.


Dated: November 29, 2010                            /s/ Freda L. Wolfson_____

                                                   Freda L. Wolfson, U.S.D.J.